UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 6:08-CR-86-GFVT-HAI-1 |
| | ) | |
| EVERETT MORGAN, | ) | RECOMMENDED DISPOSITION |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

*** *** *** ***

The Court, on referral (D.E. 148), considers reported violations of supervised release conditions by Defendant Everett Morgan. The District Court entered a judgment against Defendant on August 6, 2009, for conspiring to distribute a mixture or substance containing methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 846. D.E. 98. Defendant was originally sentenced to fifty-one months of imprisonment followed by six years of supervised release. *Id.* However, Morgan was re-sentenced on October 20, 2010, and an amended judgment was entered sentencing him 39 months imprisonment, followed again by six years of supervised release. D.E. 121. Defendant began his supervised release term on June 28, 2011.

On October 15, 2012, the United States Probation Office (USPO) issued a Supervised Release Violation Report, and secured a warrant from the District Judge. The Report charges Defendant, in Violation #1, with violating Standard Condition #4, which provides that "[t]he defendant shall refrain from obstructing or attempting to obstruct or tamper, in any fashion, with the efficiency and accuracy of any prohibited substance testing which is required as a condition of release." The Report also charges Defendant, in Violation #2, with violating Standard

Condition #7, which provides that "[t]he defendant . . . shall not purchase, possess, use, distribute, or administer any controlled substance . . . except as prescribed by a physician." Specifically, the Report states that, on August 21, 2012, a urine specimen provided by Defendant appeared clear in color, and was not consistent with the normal color of urine. When confronted by the USPO, Defendant denied doing anything to dilute his urine. According to the Report, the specimen was sent to Alere Laboratory for analysis and came back as diluted. The Report further states that, on September 25, Defendant again provided a urine specimen for testing, and once again it appeared clear in color. The Report states that the USPO again confronted Defendant, who denied knowing how to dilute his urine, but admitted to drinking water all day. On September 27, according to the Report, the September 25 specimen also came back as diluted. The Report also states that a sweat patch was placed on Defendant during the September 25 visit. According to the Report, when Defendant appeared at the USPO on October 1 to have the sweat patch removed, it was not intact, and it appeared as though someone had attempted to tamper with it. The sweat patch was sent to Clinical Reference Laboratory for analysis, and the Report states that the results were positive for amphetamine and methamphetamine. Also on October 1, according to the Report, Defendant provided another urine specimen, which was consistent with the normal color of urine, and was tested with an instant testing device with negative results. The Report also notes that another sweat patch was placed on Defendant on this date, but the results were not yet available at the time of the Report.

Additionally, the Report charges Defendant, in Violation #3, with violating the condition of his supervision which provides that "[t]he defendant shall not commit another federal, state, or local crime." The Report reasons that, with Defendant's prior felony drug conviction, and pursuant to Sixth Circuit case law holding that the use of a controlled substance is the equivalent

2

of possessing the controlled substance, simple possession of amphetamine and methamphetamine constitutes a violation of 21 U.S.C. § 844(a). Finally, in an October 22, 2012 Report Addendum, Defendant is also alleged, in Violation #4, to have violated Standard Condition #7, which provides that "[t]he defendant . . . shall not purchase, possess, use, distribute, or administer any controlled substance . . . except as prescribed by a physician." The Addendum states that the results of the sweat patch applied on October 1 were received on October 21 and were positive for amphetamine and methamphetamine. The Addendum also charges Defendant, in Violation #5, with violating the condition of his supervision which provides that "[t]he defendant shall not commit another federal, state, or local crime," based upon these positive results.

The Court conducted an initial appearance pursuant to Rule 32.1 on October 26, 2012, and set a final hearing following a knowing, voluntary, and intelligent waiver of the right to a preliminary hearing. D.E. 150. At the initial appearance, the United States made an oral motion for interim detention, and Defendant did not object. *Id.* The Court found that detention was appropriate as Defendant did not carry the heavy release burden imposed upon him under Rule 32.1(a)(6) and 18 U.S.C. § 3143(a). *Id.*

At the final hearing on November 1, 2012, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. Defendant competently entered a knowing, voluntary, and intelligent stipulation to the charged violations. Further, for purposes of Rule 32.1 proceedings, Defendant admitted the factual basis for the violations, as described in the Report and as clarified on the record.[1] In the Supervised Release context, the Sixth Circuit treats controlled substance

---

[1] With respect to Violation #1, Defendant admitted to tampering with the sweat patch placed on him by the USPO. The Court found this was a sufficient factual basis to find a violation of Standard Condition #4, which provides that "[t]he defendant shall refrain from obstructing or

use as equivalent to possession. *See United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000). The United States thus established Violations #1-5 under the standard of § 3583(e).

At the final hearing, the United States recommended revocation and imprisonment for a period of twenty-seven months, with no term of supervision to follow. The United States argued that Defendant is a danger to the public given his substantial criminal record and history of alcohol, marijuana, and methamphetamine use. Defendant sought imprisonment for a period of twenty-one months, and joined in the United States' request that no further term of supervision be imposed. Defendant noted that the instant violations are Defendant's first after being on supervision for over a year, and claimed that twenty-one months is a sufficient amount of time to deter future conduct. Neither recommendation is binding on the Court.

The Court has evaluated the entire record, including the recent Supervised Release Violation Report and Addendum and accompanying documents, and the sentencing materials from the underlying Judgment and Amended Judgment in this District. Additionally, the Court has considered all of the § 3553 factors imported into the § 3583(e) analysis. Under § 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant's § 841 conviction was for a Class C felony. *See* 18 U.S.C. § 841(b)(1)(C); 18 U.S.C. § 3559. For a Class C felony, the maximum revocation sentence provided under § 3583 is three years of imprisonment. *See* 18 U.S.C. § 3583(e)(3).[2] The Policy Statements in Chapter 7 of the Guidelines provide advisory

---

attempting to obstruct or tamper, in any fashion, with the efficiency and accuracy of any prohibited substance testing which is required as a condition of release." Defendant denied knowing how to dilute his urine, and the Court declined to address whether such knowledge is required to prove a violation because the violation was otherwise established by the admitted sweat patch tampering.

[2] The Court uses the version of 18 U.S.C. § 3583(e)(3) in effect in May of 2008, as this was the date of the underlying offense.

imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the particular violation proven. *See United States v. Perez-Arellano*, 212 F. App'x. 436, 438-39 (6th Cir. 2007) ("Although the policy statements found in Chapter Seven of the United States Sentencing Guidelines recommend ranges of imprisonment, U.S.S.G. § 7B1.4, such statements 'are merely advisory' and need only be considered by the district court before sentence is imposed.") (citation omitted). Under § 7B1.1, Defendant's admitted conduct would qualify as Grade C violations with respect to Violations #1, #2, and #4, and Grade B violations with respect to Violations #3 and #5. Given Defendant's criminal history category of VI (the category at the time of the conviction in this District) and a Grade B violation, *see* U.S.S.G. § 7B1.2(b) ("Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade."), Defendant's range, under the Revocation Table of Chapter 7, is 21-27 months.

Congress does ***mandate*** revocation in a case of this nature. By statute, the Court must revoke Defendant's release because he possessed a controlled substance. *See* 18 U.S.C. § 3583(g)(1); *see also Crace*, 207 F.3d at 836 (equating use with possession). The Sixth Circuit clearly and repeatedly has equated drug use with drug possession, and Defendant's admitted use in this context undoubtedly results in application of § 3583(g)(1). *See United States v. Metcalf*, 292 F. App'x 447, 450 n.2 (6th Cir. 2008) ("Mandatory revocation was . . . warranted under § 3583(g)(1), as we have held that use of a controlled substance constitutes possession under that subsection."). The only exception would be if a suitable treatment option, or Defendant's record of involvement in treatment, warranted relief. *See* 18 U.S.C. § 3583(d); *Crace*, 207 F.3d at 835 (holding district court "required by 18 U.S.C. § 3583(g) to revoke the defendant's term of

5

supervised release upon the defendant's positive drug test and admission of the use of a controlled substance unless defendant could come under the exception in 18 U.S.C. § 3583(d)"). Defendant did not seek, nor does the record support, application of this exception.

The Court has considered all of the § 3553 factors imported into the § 3583(e) analysis, and finds that imprisonment of twenty-seven months is appropriate based upon those factors. The Guidelines suggest that the *primary* wrong in the supervised release context is violation of the Court's trust by an offender; the particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator.").

The Court has reviewed the previous transcripts in this matter, including those from Defendant's rearraignment, sentencing, and re-sentencing. Defendant received an original term of imprisonment of fifty-one months, but this was reduced to thirty-nine months on remand. This represented a bit of a break for Defendant, as the top of the guideline range at Defendant's re-sentencing was forty-one months. District Judge Van Tatenhove noted, when imposing the thirty-nine month sentence, that he was impressed by the numerous opportunities Defendant took advantage of during the period of incarceration between his original sentencing and the re-sentencing hearing. D.E. 122 at 20. He noted, "And I really do have in front of me the record of someone who's trying hard to get clean, who I think wants to stay clean when he gets out, and we've put in front of you some opportunities." *Id.*

Judge Van Tatenhove made it clear to Defendant that this break came with an expectation that Defendant would continue with his rehabilitative efforts and work to stay clean. *Id.* at 25 ("I want to encourage you to continue in your rehabilitative efforts, too. You'll be given some

6

opportunities during your period of supervision, and we'll hope not to cross paths again, at least not under these circumstances."). Defendant was adequately informed of what would be required of him while on release. Judge Van Tatenhove explained that prominent among the conditions of Defendant's release was "the requirement that you stay out of trouble, and most importantly, that you stay clean. And the consequence for that is potentially seeing your supervision revoked, and you'll find yourself incarcerated again." *Id.* at 23. Unfortunately, Defendant has breached the trust granted to him by the Court. The Court must impose a sentence that is sufficient, but not greater than necessary, to address this breach of trust and the other statutory goals imported into § 3583(e).

Here, the Court must impose a sentence at the high end of the guideline range to satisfy these objectives, and it therefore finds that a sentence of twenty-seven months is appropriate. The Court previously placed its trust in Defendant, but Defendant did not pay that trust back. Instead, he has continued using drugs and has attempted to tamper with his drug test results. With respect to the breach of the Court's trust, the tampering violation is particularly concerning as it undermines the goals of the rehabilitative opportunities afforded to Defendant. Such tampering cannot be tolerated.

The Court is also required to consider, when imposing a sentence, the need to deter criminal conduct and protect the public from the crimes of Defendant. Defendant clearly has a dangerous addiction, and methamphetamine is dangerous by its nature. His criminal history category of VI (the highest possible) spans more than twenty years and includes many dangerous offenses. His abuse of methamphetamine on a daily basis beginning at age thirty correlates with increasingly serious and dangerous criminal behavior involving drugs. Continued methamphetamine abuse will no doubt lead to future dangerous criminal conduct. Defendant's

drug addiction is not only dangerous to society, but also to those even closer to him. Defendant acknowledged at the final hearing that he has a young baby; the Court warns Defendant that his child will follow in his footsteps. If Defendant continues using drugs, he is creating circumstances that will put his child in danger, and later, potentially in the same position as Defendant.

A court also may reimpose supervised release, following revocation, for a maximum period that usually subtracts any term of imprisonment actually imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h). The post-revocation cap depends on the "term of supervised release authorized by statute for the offense that resulted in the original term of supervised release." *See* 18 U.S.C. § 3583(h). The general supervision-term limits of § 3583(b) apply "[e]xcept as otherwise provided." *See id.* § 3583(b). Here, the maximum term of supervised release would be life, *see* 21 U.S.C. § 841(b)(1)(C) (providing for a maximum term for supervised release of life for the underlying offense), less any revocation term imposed, *see* 18 U.S.C. § 3583(h). Based upon the factors described above, the Court finds that an additional term of supervised release of twelve months following the term of imprisonment is warranted. The Court is giving Defendant another chance to prove that he can beat his addiction. Additionally, the Court finds that Defendant should be monitored to ensure that he is not a danger to his child and others. Defendant still has the ability and opportunity to change the course of his life. Part of that appropriate course must include strict compliance with ***all*** conditions of supervised release in the future.

The Court **RECOMMENDS**, based on the violations found:

1. Revocation and imprisonment for a term of twenty-seven months.

2. An additional supervised release term of twelve months. While on supervised release, the Court recommends that Defendant be subject to the conditions imposed by the Court's judgment dated October 20, 2010.

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on Judge Van Tatenhove's docket upon submission.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). As defined by § 636(b)(1), within fourteen days after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, de novo, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981); *Thomas v. Arn*, 106 S. Ct. 466 (1985).

This the 6th day of November, 2012.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge